**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Gabriel Valenzuela, | No. CV 11-0268-PHX-RCB (JFM) |
| Plaintiff, | **ORDER** |
| vs. | |
| D. Hurley, et al., | |
| Defendants. | |

Plaintiff Johnny Gabriel Valenzuela brought this civil rights action pro se under 42 U.S.C. § 1983 against Mesa Police Officers Dustin Hurley and Steven Cervantes for alleged excessive force (Doc. 1). Plaintiff is now represented by counsel (Doc. 8). Before the Court is Defendants' Motion for Summary Judgment (Doc. 15) and Motion to Strike (Doc. 38) and Plaintiff's Response to the Court's Order to Show Cause why no opposition to the summary judgment motion was filed and why the motion should not treated as unopposed (Doc. 36).

The Court finds that Plaintiff fails to show good cause. But even when considering Plaintiff's untimely opposition that was filed in conjunction with the response to the Order to Show Cause, Defendants are entitled to summary judgment. Their summary judgment motion will be granted, their Motion to Strike will be denied as moot, and the action will be terminated.

**I.    Background**

Plaintiff's claim arose on January 2, 2011, when Defendants stopped the car in which

he was riding and ordered him out of the car (Doc. 1). Plaintiff alleged that when he stepped out of the car, Defendants tasered him in the thigh; forced him face down onto the ground; and then punched, kicked, and kneed him in the back and head, nearly rendering him unconscious (id.).

Defendants moved for summary judgment on the ground that Plaintiff's claim is barred under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (Doc. 15). Plaintiff failed to file a response to the motion; however, after the motion was filed, Plaintiff filed discovery notices (Docs. 17, 31). Because Plaintiff's filings indicated an intent to litigate the action, the Court issued an Order to Show Cause why no opposition to summary judgment was filed and why the summary judgment motion should not be treated as unopposed (Doc. 33).

On February 17, 2012, Plaintiff filed his response to the Order to Show Cause and a response to Defendants' summary judgment motion (Docs. 35-36). Defendants submitted their reply in support of summary judgment, which included objections and a Motion to Strike Plaintiff's references to unsupported facts within his summary judgment response (Doc. 38).[1]

**II.     Response to Order to Show Cause**

In the response to the Order to Show Cause, Plaintiff's counsel states that in mid-September 2009—when Defendants filed their Motion for Summary Judgment—he was in the middle of an eight-week criminal trial that consumed all of his attention and, consequently, the deadline for filing the response to the motion was not calendared (Doc. 36 at 1-2). Plaintiff's counsel assumes responsibility for the oversight and asserts that his client seeks to litigate this case and should not be penalized for counsel's error (id. at 2). There is no affidavit from counsel attached to the response.

The Ninth Circuit has characterized good cause to mean, at a minimum, "excusable neglect." Electrical Specialty Co. v. Road Ranch Supply, Inc., 967 F.2d 309, 312 (9th Cir.

---

[1] Defendants also filed a response to Plaintiff's response to the Order to Show Cause (Doc. 37). The Order to Show Cause did not direct Defendants to file a response to Plaintiff's response, and the Court will not consider Defendants' filing.

1992) (citing Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991)). Inadvertence or oversight of counsel does not constitute good cause for failure to diligently prosecute a cause of action. See Wei v. State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (in addressing good cause standard under Federal Rule of Civil Procedure 16, stating that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief").

Even if Plaintiff's response to the Order to Show Cause was properly supported by an affidavit from counsel, it fails to establish good cause. As set forth in the Order to Show Cause, defense counsel received electronic service of the motion (Doc. 33 at 2-3). The docket also reflects that a week after the motion was filed, Plaintiff's counsel signed the parties' joint Report of Rule 26(f) Planning Meeting, which referenced the pending summary judgment motion (Doc. 17 at 5). Further, the Court's October 2011 discovery order referenced the pending summary judgment motion (Doc. 18 at 1). In light of these notices after service of the motion, that Plaintiff's counsel was involved in a criminal trial and inadvertently failed to calendar the response deadline is insufficient to show good cause for failing to timely respond to Defendants' motion.

### III. **Plaintiff's Response to Defendants' Summary Judgment Motion**

As stated, with his response to the Order to Show Cause, Plaintiff submitted his untimely opposition brief to Defendants' summary judgment motion. Plaintiff's response wholly fails to comply with the Federal and Local Rules of Civil Procedure governing summary judgment. The Local Rule requires the party opposing summary judgment to submit a separate statement of facts that sets forth numbered paragraphs that correspond to the movant's numbered paragraphs and to indicate whether each fact is disputed or not. LRCiv 56.1(b). Plaintiff did not submit a separate statement of facts.

Federal Rule of Civil Procedure 56(c)(1)(A) requires a party to support its assertions by citing to particular parts of the materials in the record. See Carmen v. San Francisco United Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (in a summary judgment analysis the court is "not required to comb the record"). Throughout his response brief, Plaintiff refers

- 3 -

1  to answers given at his deposition; however, Plaintiff did not submit the deposition transcript
2  with his response, and he does not cite to where in the record the deposition testimony may
3  be found. Indeed, Plaintiff does not submit any documentary evidence in support of his
4  opposition to summary judgment.

5      Defendants object to and move to strike many of the allegations in Plaintiff's response
6  on the ground that the response does not cite to the record and the allegations are
7  unsupported (Doc. 38 at 8-9).

8      Despite Plaintiff's untimely and procedurally deficient response, the Court
9  nonetheless finds that even if it considers the unsupported response, Defendants are entitled
10  to summary judgment. Defendants' Motion to Strike will therefore be denied as moot.

11  **IV.**  **Summary Judgment**

12      **A.**  **Legal Standard**

13      A court "shall grant summary judgment if the movant shows that there is no genuine
14  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
15  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under
16  summary judgment practice, the movant bears the initial responsibility of presenting the basis
17  for its motion and identifying those portions of the record, together with affidavits, that it
18  believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S.
19  at 323.

20      If the movant meets its initial responsibility, the burden then shifts to the nonmovant
21  to demonstrate the existence of a factual dispute and that the fact in contention is material
22  and that the dispute is genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250
23  (1986). A fact is material if it might affect the outcome of the suit under the governing law,
24  and the dispute is genuine if the evidence is such that a reasonable jury could return a verdict
25  for the nonmovant. Id.; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th
26  Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its
27  favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to
28

1  resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities
2  Serv. Co., 391 U.S. 253, 288-89 (1968).

3  At summary judgment, the judge's function is not to weigh the evidence and
4  determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
5  U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
6  inferences in the nonmovant's favor. Id. at 255.

**B.   Arguments**

**1. Defendants' Motion**

Defendants submit a separate Statement of Facts (DSOF), which is supported by (1) affidavits from both Defendants and from another Mesa police officer and a Mesa Fire Department paramedic; (2) copies of Plaintiff's Plea Agreement; and (3) a certified copy of the transcript from Plaintiff's guilty plea proceeding (Doc. 16, Exs. 1-6). Defendants' DSOF sets forth the following facts:

At approximately 1:15 a.m. on January 2, 2011, Defendants observed a car driving with two broken taillights and initiated a traffic stop of the car in which Plaintiff was in the passenger seat (DSOF ¶¶ 2-4). When they approached the car, they saw that Plaintiff had something in his hands and gave multiple verbal commands to show what was in his hands (id. ¶¶ 6-7). Plaintiff did not comply, and Hurley saw Plaintiff place what appeared to be a baggie with a white powdery substance on the seat next to him (id. ¶¶ 8-9). Hurley told Cervantes what he saw, and he asked Plaintiff to step out of the car multiple times; Plaintiff refused to get out (id. ¶¶ 11-13). Cervantes then opened the car door and told Plaintiff to get out, but Plaintiff still refused (id. ¶¶ 14-15). Cervantes reached into the car to assist Plaintiff out, and Plaintiff grabbed the baggie and ripped it open, causing the white substance to spill on his lap (id. ¶¶ 16-17). Cervantes grabbed Plaintiff's arm to assist him out of the car, and Plaintiff pushed him away and started throwing punches and yelling at him (id. ¶¶ 18-19). Hurley walked around the car to help Cervantes, and Plaintiff began punching and hitting both Defendants in their chests with his fists (id. ¶¶ 20-21). Plaintiff was wearing a thick down jacket, and Defendants could not get a hold of him while he was punching them (id.

1  ¶ 23). Fearing that the situation was escalating and unsure of whether there were any
2  weapons in the car or on Plaintiff, Hurley decided it was necessary to tase Plaintiff, and he
3  told Cervantes to back away (id. ¶¶ 22, 24). Hurley deployed his taser, and the prongs
4  contacted Plaintiff's upper thigh (id. ¶ 25). The taser did not have great effect because of
5  Plaintiff's jacket, but Plaintiff locked up long enough to roll out of the car, at which point
6  Defendants were able to lay him on the ground on his stomach (id. ¶ 26). Plaintiff then
7  began kicking and throwing punches at Defendants, and they were unable to get his hands
8  cuffed (id. ¶ 27). Hurley tried to subdue Plaintiff by using the taser as a drive stun, to no
9  avail (id. ¶ 28). Plaintiff rolled on his side and continued to fight Defendants, so Cervantes
10 sat on Plaintiff's legs while Hurley positioned himself on Plaintiff's upper body and tried to
11 grab his arms to handcuff him (id. ¶¶ 29-31). Hurley could only get one arm because
12 Plaintiff was still fighting with his left arm; Hurley told Plaintiff to stop resisting several
13 times (id. ¶¶ 32-33). Hurley delivered super scapular strikes to Plaintiff's upper shoulder
14 area using the soft bottom of his fist, but because Plaintiff was moving so much, the strikes
15 landed on the side of Plaintiff's head (id. ¶¶ 34-35). Hurley was then able to handcuff
16 Plaintiff (id. ¶ 36). Paramedics who arrived on the scene determined that Plaintiff did not
17 need to be transported to a hospital, and he was released to police custody for booking (id.
18 ¶¶ 40-41).

19     On May 9, 2011, Plaintiff pled guilty to possession of a dangerous drug and
20 aggravated assault on a police officer—charges arising out of the January 2, 2011 incident
21 (id. ¶ 43).

22     In their motion, Defendants argue that the allegations in Plaintiff's Complaint
23 contradict his guilty plea because he alleges that Defendants assaulted him with the taser and
24 beat him for no apparent reason (Doc. 15 at 6). Defendants assert that Plaintiff's aggravated
25 assault conviction necessarily implies that the officers did not use excessive force against him
26 (id.). They note that Plaintiff's excessive-force claim arises out of the same acts that led to
27 his guilty plea and, for this reason, they contend that success in this case would imply the
28 invalidity of his conviction and his claim is therefore Heck barred (id. at 6-7).

### 2. Plaintiff's Response

In his response, Plaintiff concedes that he did not immediately respond to commands to exit the vehicle because he was trying to hide drugs (Doc. 35 at 2). He also admits that when he exited the vehicle, he momentarily struggled with one of the Defendants (id.). Plaintiff asserts that when he was shot with a taser by the other Defendant, he fell face first to the ground, began to writhe and twitch in response to the electric shock, and he lost control of his body and could not hear any additional commands from Defendants (id.). According to Plaintiff, even though he was subdued, Hurley then jumped on his back with both knees and pummeled the left side of Plaintiff's head and face with a closed fist (id. at 2-3). Plaintiff claims that he suffered "significant physical injuries," including a 50% loss of sight in one eye (id. at 3).

Plaintiff argues that his claim is not Heck barred because the facts in this case do not compare to the facts in Heck, which involved a claim for malicious prosecution, not excessive force (id. at 3-4). Plaintiff notes that if the excessive force by Defendants occurred after the criminal actions for which Plaintiff was convicted, and if his criminal actions ceased prior to the use of excessive force, then Heck does not apply (id. at 4). Plaintiff claims that is the case here—that Defendants' use of excessive force occurred after Plaintiff was subdued by the use of the taser gun (id.). Plaintiff states that he does not recall what happened after he hit the ground, and thus, he was not physically or mentally capable of resisting arrest (id.). Plaintiff states that his next recollection was someone striking him in the back (id.).

Plaintiff concludes that on this record, there are disputed issues of fact, including (1) whether Plaintiff ceased resisting arrest, (2) whether Defendants used excessive force after Plaintiff ceased resisting arrest, and (3) whether the force used by Defendants was justified (id. at 5). Plaintiff insists that Heck is not dispositive of this matter and Defendants are not entitled to summary Judgment as a matter of law (id.).

### 3. Defendants' Reply

In reply, Defendants assert that Plaintiff's response presents arguments that are

- 7 -

1   contrary to the allegations in his Complaint (Doc. 38). They note that in his Complaint,
2   Plaintiff averred that he was immediately tasered, rushed to the sidewalk, and then subjected
3   to excessive force; however, in his summary judgment response, he states that he
4   momentarily struggled with Defendants before he was tasered and then stopped struggling
5   (id. at 3). Defendants also assert that Plaintiff's deposition testimony bars Plaintiff's claim
6   under Heck because he testified that he did not commit the crime of aggravated assault,
7   despite his plea for aggravated assault (id. at 3-6; Ex. A, Pl. Dep. Nov. 22, 2011).

8       **C.**    **Analysis**

9       A claim that law enforcement officers have used excessive force in the course of an
10  arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham
11  v. Connor, 490 U.S. 386, 395 (1989). The inquiry is "whether the officers' actions are
12  'objectively reasonable' in light of the facts and circumstances confronting them, without
13  regard to their underlying intent or motivation." Id. at 397 (citations omitted). To recover
14  damages for harm caused by actions whose unlawfulness would render a conviction or
15  sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been
16  reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal,
17  or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512
18  U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence
19  that has not been so invalidated is not cognizable under § 1983." Id. at 487. In other words,
20  if the conviction or sentence arises out of the same facts that underlie the alleged unlawful
21  behavior for which damages are sought, the § 1983 suit must be dismissed. Smithart v.
22  Towery, 79 F.3d 951, 952 (9th Cir. 1996). If a state prisoner seeks damages in a § 1983 suit,
23  a district court must therefore consider whether a judgment in favor of the plaintiff would
24  necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be
25  dismissed. Heck, 512 U.S. at 487.

26      A conviction for aggravated assault does not necessarily bar an excessive-force claim.
27  To determine whether the Heck-bar applies, the Court must consider (1) the precise factual
28  basis for Plaintiff's aggravated assault conviction as compared to the factual basis for the

- 8 -

1 claim of excessive force and (2) the relative timing of the two events. See Smith v. City of
2 Hemet, 394 F.3d 689, 699 (9th Cir. 2005) (en banc). If the facts underlying the alleged
3 excessive force are separate and distinct from those that gave rise to the assault conviction,
4 the excessive-force claim is not barred. For example, in Smithart, the plaintiff pled guilty
5 to assault with a deadly weapon; he drove his truck at police officers. 79 F.3d at 952. He
6 filed a § 1983 claim alleging that after he exited his truck, the officers provoked him into a
7 confrontation that they escalated unnecessarily and then they assaulted him. Id. The Ninth
8 Circuit held that the assault-with-a-deadly-weapon conviction and the excessive-force claim
9 did not arise out of the same facts. See id. Therefore, success on the excessive-force claim
10 would not demonstrate the invalidity of the conviction against the plaintiff, and his claim was
11 not barred by Heck. Id. at 952-53.

12 If the alleged excessive force and the plaintiff's conviction stem from the same facts,
13 however, Heck bars the excessive-force claim. This was the case in Cunningham v. Gates,
14 where the plaintiff was found guilty of charges arising out of a robbery and a shoot out. 312
15 F.3d 1148, 1154-55 (9th Cir. 2002). The Ninth Circuit determined that Cunningham's
16 excessive-force claim was barred by Heck because his provocative act of firing on the police
17 and the police response that he claimed was excessive were so closely interrelated—there
18 was no break between his acts and the police response. Id. at 1155.

19 Here, there is no dispute that Plaintiff pled guilty to aggravated assault against a police
20 officer (Doc. 16, Ex. 5 & Ex. 6 at 6). Nor is there any dispute that the assault stemmed from
21 the incident on January 2, 2011 (Doc. 16, DSOF ¶¶ 7-26; Doc. 35 at 2). Specifically, the
22 aggravated assault charge was based on Plaintiff's response to Defendants' attempts to
23 remove Plaintiff from the vehicle and secure him in handcuffs (Doc. 16, DSOF ¶¶ 16-36).
24 In failing to file a controverting statement of facts, Plaintiff does not specifically dispute
25 Defendants' factual assertions as to how the incident unfolded. Plaintiff claims, however,
26 that Defendants' use of force occurred after he stopped resisting (Doc. 35 at 4-5). But
27 Plaintiff does not deny that after he was on the ground, he was fighting Defendants and
28 attempting to throw punches; rather, he states that he does not recall what happened at that

- 9 -

1  moment (id. at 4).  Further, Plaintiff does not deny that he continued to fight Defendants and
2  throw punches after he felt someone striking or stepping on his back (see id. at 4-5).  Plaintiff
3  does not indicate when he allegedly stopped resisting, and he presents no specific facts or
4  evidence to suggest that he stopped fighting and resisting before Defendants used force to
5  try to subdue him.  As such, there are no facts or evidence to show that there were separate
6  factual bases for his assault conviction and the alleged excessive force.  See Celotex, 477
7  U.S. at 324 (nonmovant must "designate specific facts showing" a material factual dispute).

8  Contrary to Plaintiff's assertion, Heck is applicable here, even though the underlying
9  conviction is excessive force and not malicious prosecution.  The legal premise set forth in
10 Heck is the same; that is, success on Plaintiff's excessive-force claim would necessarily
11 imply the invalidity of his aggravated-assault conviction.  Plaintiff's claim against
12 Defendants is therefore barred by Heck and will be dismissed without prejudice.  See Heck,
13 512 U.S. at 486-87; Trimble v. City of Santa Rosa, 49 F.3d 584, 585 (9th Cir. 1995)
14 (dismissal pursuant to Heck must be without prejudice).

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 15) and Motion to Strike (Doc. 38).

(2) Defendants' Motion to Strike (Doc. 38) is **denied** as moot.

(3) Defendants' Motion for Summary Judgment (Doc. 15) is **granted**.

(4) Plaintiff's Complaint is dismissed without prejudice pursuant to Heck v. Humphrey, 512 U.S. 489 (1994).

DATED this 26th day of March, 2012.

Robert C. Broomfield
Senior United States District Judge

- 10 -